IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KEVIN MORTON, et al.,** | : | Case No. 2:05-CV-1017 |
| Plaintiffs, | : | Judge Marbley |
| v. | : | Magistrate Judge King |
| **DANA & PARISER CO., L.P.A., et al.** | : | |
| Defendants. | : | |

## MOTION OF DEFENDANTS DANA & PARISER CO., L.P.A., AND DAVID B. PARISER FOR JUDGMENT ON THE PLEADINGS

Defendants, **Dana & Pariser Co., L.P.A.**, and **David B. Pariser**, (the movant Defendants) by their counsel, hereby move the Court, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for issuance of a judgment entry granting the movants judgment on the pleadings. This motion is based upon the grounds set forth in particularity in the accompanying Memorandum In Support which is incorporated herein by reference.

Respectfully Submitted,

**MAZANEC, RASKIN & RYDER CO., L.P.A.**

/s/ David K. Frank

---
David K. Frank          (0022925)
250 Civic Center Drive, Suite 400
Columbus, Ohio 43215
(614) 228-5931
(614) 228-5934 FAX
E-mail: dfrank@mrrlaw.com

**Trial Attorney for Defendants**

## **MEMORANDUM IN SUPPORT**

Fed. R. Civ. P. 12(c) provides, in part, that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Pleadings are considered "closed" once a complaint and answer have been filed. Fed. R. Civ. P. 7(a). Rule 12(c) permits a judgment based upon the pleadings alone. See <u>Alexander v. City of Chicago</u>, 994 F. 2d 333, 336 (7th Cir. 1993). The pleadings include the **complaint, the answers, and any written instruments attached as exhibits**. Fed. R. Civ. P. 10(c). ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). See <u>Warzon v. Drew</u>, 60 F. 3d 1234, 1237 (7th Cir. 1995) (stating that exhibits attached to the complaint are incorporated into the pleading for purposes of Rule 12(c) motions). "Under Rule 10(c), the attached documents are incorporated into the pleadings." <u>Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend</u>, 163 F. 3d 449, 452 (7th Cir.1998).

The Court reviews a Rule 12(c) motion under the same standard as a 12(b)(6) motion for dismissal. <u>Zeigler v. IBP Hog Market, Inc.</u>, 249 F. 3d 509, 511-12 (6th Cir. 2001). The Court must limit its determination of a motion for judgment on the pleadings solely to the allegations in the pleadings **and any writings attached to those pleadings**. <u>Drozectc v. Lawyers Title Ins. Corp.</u> 140 Ohio App. 3d 816 (Ohio App. 8 Dist. 2000)." The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." <u>Paskvan v. City of Cleveland Civil Serv. Comm'n</u>, 946 F. 2d 1233, 1235 (6th Cir. 1991). For purposes of the motion, "all well-pleaded material allegations of the pleadings of the [non-movant] must be taken as true." <u>Beal v. Missouri Pac. R.R Corp.</u>, 312 U.S. 45, 51 (1941);

*Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F. 2d 478, 480 (6th Cir. 1973); *United States v. Moriarty*, 8 F. 3d 329, 332 (6th Cir. 1993), but the Court **need not accept as true legal conclusions or unwarranted factual inferences.** *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999); *In re Sofamor Danek Group, Inc.*, 123 F. 3d 394, 400 (6th Cir. 1997); *Moran v. Church's Fried Chicken*, 829 F. 2d 10, 12 (6th Cir. 1987). Moreover, the Court is not "obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F. 2d 279, 281 (7th Cir. 1989).

### I.

### NO MATERIAL FACTUAL ISSUE EXISTS WHICH WOULD PRECLUDE JUDGMENT ON THE PLEADINGS IN THE DEFENDANTS' FAVOR

As the Court's review of the Plaintiff's Complaint will demonstrate, no material factual issues exist in this case which would preclude judgment on the pleadings in the Defendants' favor. A "material fact" is a fact that would affect the outcome of the suit under applicable substantive law." *Russell v. Interim Personnel, Inc.*, 100 Ohio App. 3d 817, 826 (1996). There is no genuine dispute about the following facts:

### The Parties

1. **Plaintiffs Kevin Morton** and **Shirley White Harris** are residents of Columbus, Ohio (Complaint, para.1).

2. **Defendant Dana & Pariser Co., L.P.A.**, is and was, at all relevant times, a law firm with its principal place of business in Columbus, Ohio (Complaint, para. 2).

3

3. **Defendant David B. Pariser** is and was, at all relevant times, an attorney and partner in the Dana & Pariser law firm (Complaint, para. 3).

## The State Court Judicial Proceeding

4. On October 18, 2005, a "class action complaint" was filed in the Franklin County Common Pleas Court, against Dana & Pariser Co., L.P.A. and David B. Pariser, individually, in Case No. 05CVH 10-11507.

## The Plaintiffs' Class Action Complaint

5. The Plaintiffs' complaint sought, in pertinent part: (a) an order certifying the case as a class action; (b) an order "preliminarily and permanently enjoining Defendants" from engaging in certain practices; (c) statutory damages in the amount of $200 per class member; (d) the "actual damages of each class member"; (e) attorney fees, costs, and expenses pursuant to R.C. § 1345.09(F), and; "other" relief. (Complaint, p 7).

6. The Complaint (para. 6) purported to be on behalf of a "class of all persons residing in the State of Ohio:

    a. where [a] Notice of Deficiency was on Dana & Pariser letterhead when the notice was actually sent by [Columbus Finance Inc.] from one year prior to the filing of this complaint to the present date, and/or

    b. where Defendants sent a "Notice of Deficiency" from one year prior to the filing of this complaint to the present date,

    c. where the "Notice of Deficiency" did not contain all of the required language required by 15 USC 1692g."

7. The Complaint, containing two Counts, alleged that the Defendants violated Ohio Revised Code ("R.C.") § 1345.01 et seq, the Ohio Consumer Sales Practices Act ("OCSPA"), and 15 U.S.C. § 1692g et seq, the Fair Debt Collection Practices Act ("FDCPA").

4

8. Specifically, the Complaint alleged that the Defendants violated these statutes by "failing to send validation notices within five days of the initial communication [with a consumer in connection with the collection of any debt] in violation of 15 USC 1692g" **or** "giving the false impression that communications seeking to collect upon a debt were from attorneys at times when they were not". (Complaint, para. 4).

9. The Complaint was based upon the issuance of a Notice of Deficiency (attached to Plaintiffs' Complaint as Exhibits A and B) to each of the Plaintiffs on October 28, 2004 following the repossession and sale or disposition of a 1994 Cadillac automobile by Columbus Mortgage Inc., the client of the Defendants. (Complaint, para.6, 8; Answer, paras. 8, 10).

10. The motor vehicle in question was made available for sale to the public on October 22, 2004 following advertising about the sale of the vehicle which appeared in The Columbus Dispatch newspaper on or about October 13, 2004. (Answer, para. 10).

11. The said vehicle was purchased by Columbus Mortgage Inc. ("CMI") for a net sales price of $2,000, which amount was credited to the balance due under Plaintiffs' July 28, 2004 loan pertaining to the said Cadillac. (Answer, para. 10).

12. Title to the 1994 Cadillac [title no. 2507-36366] was transferred to CMI on November 8, 2004. (Answer, para. 10; Complaint, Ex. C).

13. The said Notice Of Deficiency was issued by Dana & Pariser Co., L.P.A., pursuant to the mandatory requirement and safe harbor provisions of the Ohio Uniform Commercial Code, [specifically §§ 1309.615 and 1309.616] of the Ohio Revised Code following the repossession and sale of a 1994 Cadillac. (Answer, para. 34, 35).

14. The Notice was issued to provide to the Plaintiffs an explanation of the deficiency

5

resulting from the disposition of that vehicle. (Complaint, Exs. A & B; Answer, para. 8, 34, 35).

15. On its face, the Notice in question did not make any demand for the payment of a debt, but informed the recipients of the status of the matter and the existence of a deficiency. (Answer, para 34, 35).

**Removal Of The Action To This Federal Court**

16. The case was removed to this U.S. District Court (Doc.1).

**The Defendants' Answer**

17. In response to the Plaintiff's Complaint, all of the defendants filed an answer asserting various defenses, including constitutional (Answer, para. 64-76) and immunity (Id, para. 59-63) defenses.

II.

## THE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL OF THE PLAINTIFFS' STATE [OCSPA] CLAIMS.

For a number of compelling reasons, the Defendants are entitled to judgment as a matter of law on the Plaintiffs' State claims:

### A. The Ohio Consumer Sales Practices Act ("OCSPA") Is Not Applicable To The Conduct Which Is The Subject Of The Plaintiff's Complaint.

The Plaintiff's OCSPA claim [Second Cause of Action, Complaint, para. 40-45] is barred because the OCSPA is not applicable to the conduct which is the subject of the Plaintiff's Complaint. The OCSPA was enacted in 1972, five years before the FDCPA was enacted by Congress. 134 v H 103. In 1977, however, Congress recognized that Ohio still had **no debt collection laws regulating debt collection**. As reported in the 1977 Senate report [S. REP. 95-382] published at 1977 U.S.C.C.A.N. 1695, 1696-97:

6

> The primary reason why debt collection abuse is so widespread is the lack of meaningful regulation on the State level. While debt collection agencies have existed for decades, **there are 13 States**, with 40 million citizens, **that have no debt collection laws. These States are** Alabama, Delaware, Georgia, Kansas, Kentucky, Mississippi, Montana, **Ohio**, Oklahoma, Rhode Island, South Carolina, and South Dakota. [Emphasis Added]

"In general, the Ohio Consumer Sales Practices Act [OCSPA] prohibits two types of consumer **sales practices**: those which are 'unfair or deceptive' and those which are 'unconscionable.'" _Hostetter v. Fletcher_, 905 F. 2d 897 (6th Cir. 1988). The OCSPA does not, however, apply to lawyers acting on behalf of their clients. The definition of "Consumer transaction" defined in R.C. § 1345.01 of the Act makes it clear that the OCSPA **"does not include transactions between attorneys…and their clients…".** The issuance of a notice of deficiency by attorneys on behalf of their client is clearly a transaction "between attorneys…and their clients" within the meaning of the statute and, accordingly, is excluded from coverage. **Moreover, the Ohio Supreme Court has not held that the OCSPA applies to lawyers.**

### B. The OCSPA, As Applied, Infringes Upon The Power Of Ohio's Judicial Branch Of Government To Regulate The Practice Of Law In Ohio.

Even if applicable (which it is not), the OCSPA, as applied to the Defendants, violates the separation of powers doctrine which is "implicitly embedded in the constitutional framework of those sections of the Ohio Constitution that define the substances and scope of powers granted to the three branches of state government." _S. Euclid v. Jemison_, 28 Ohio St. 3d 157, 158-159 (1986); _State v. Warner_, 55 Ohio St. 3d 31, 43-44 (1990); _State ex rel. Ohio Academy of Trial Lawyers v. Sheward_, 86 Ohio St. 3d 451, 475 (1999). Also see _Cleveland Bar Ass'n v. Picklo_, 96 Ohio St. 3d 195, 196

(2002). The statute, as applied to lawyers representing their client, impermissibly infringes upon and conflicts with the power of Ohio's judicial branch of government to regulate the practice of law in Ohio. **The General Assembly cannot, constitutionally, regulate the conduct of Ohio attorneys or impose potential liability, under the OCSPA, for such conduct.**

The legislature's lawmaking power is limited by the state and federal constitutions, <u>Angell v. Toledo</u>, 153 Ohio St. 179, 181, (1950) and the separation of powers doctrine. "In our constitutional scheme, the judicial power resides in the judicial branch. Section 1, Article IV of the Ohio Constitution." <u>State ex re. Bray v. Russell</u>, 89 Ohio St. 3d 132, 136 (2000). This judicial power, which is exclusive to the judicial branch, includes **the regulation of attorneys and the practice of law in Ohio.** See <u>Cleveland Bar Assn v. Picklo</u>, 96 Ohio St. 3d 195, 196-197 (2002), As noted in <u>Sharon Village v. Bd of Revision</u>, 78 Ohio St. 3d 479, 480-481 (1997):

> According to Section 5, Article IV of the Ohio Constitution, **the regulation of the practice of law is vested exclusively in the Ohio Supreme Court.** *** "**The practice of law** is not limited to the conduct of cases in court. It **embraces the preparation of pleadings and other papers incident to actions** and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the **preparation of legal instruments of all kinds**, and in general all advice to clients **and all action taken for them** in matters connected with the law." <u>Land Title Abstract & Trust Co. v. Dworken</u> (1934), 129 Ohio St. 23 * * * paragraph one of the syllabus. ***. [Emphasis Added]

**C.     The Plaintiffs' State Claims Against The Defendants Are Barred Since The Defendants Have Absolute Immunity From Those Claims.**

In <u>Scholler v. Scholler</u>, 10 Ohio St. 3d 98 (1984) at syllabus 1, the Court held that:

8

> An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously.

This has been described by one Ohio court as "**the doctrine of attorney immunity**". See *Citicasters Company v. Bricker & Eckler, L.L.P.*, 149 Ohio App. 3d 705, 713 (2002). In the present case, the Plaintiff's claims arise from the performance of the Defendants as attorneys in good faith on behalf of, and with the knowledge of their client (Answer, para. 60). The Defendants did not act maliciously (Id. para. 61). Accordingly, the defendants are immune under Ohio law from any liability to Plaintiffs on the OCSPA claims.

### D.     The Plaintiffs' State Claims Fail As A Matter Of Law.

The Plaintiffs alleged in their Complaint at para. 16 that:

> The manner in which Defendants violate 15 USC 1692g also constitutes an unfair and deceptive act or practice in violation of the "Consumer Sales Practices Act." R.C. § 1345.01 *et seq.*

They also alleged that "failing to send validation notices within five days of the initial communication in violation of 15 USC 1692g" or "giving the false impression that communications seeking to collect a debt were from attorneys at times when they were not" violated the OCSPA (Complaint, paras. 4,5).

For the reasons outlined in this Memorandum at pages 11-14, even assuming, arguendo, that a violation of the FDCPA is, ipso facto, a violation of the OCSPA (which is not the case), the Defendants clearly did not violate 15 USC § 1692, nor were the Notices of Deficiency "communications seeking to collect a debt", even though they were from attorneys [the Defendants].

9

### E. The Plaintiffs' State Claim For Injunctive Relief Is Barred Since The Plaintiffs Have An Adequate Remedy At Law.

For the reasons outlined in Sections A through D above, the Plaintiffs' claim for injunctive relief under the OCSPA, which is predicated on the existence of unlawful conduct by the Defendants is barred. It is also barred because the Plaintiffs have an adequate remedy at law. In *Mick v. Level Propane Gases, Inc.*, this Court held that in order to be entitled to injunctive relief under the OCSPA, the consumer must satisfy the traditional requirements for equitable relief. 168 F. Supp. 2d 804 (S.D. Ohio 2001).

## II.

## THE MOVANT DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL OF THE PLAINTIFFS' FEDERAL [FDCPA] CLAIMS.

The Defendants are also entitled to judgment as a matter of law on the Plaintiffs' Federal claims under the Fair Debt Collection Practices Act (FDCPA"):

### E. The Plaintiff's FDCPA Claim Fails As A Matter Of Law Since The Defendants Had No Obligation To Include Validation Language In The Notices Of Deficiency In Question.

The FDCPA requires debt collectors to send a written validation notice containing certain information to a consumer debtor within five (5) days after the initial communication with a consumer in connection with the collection of a debt. See, e.g., *Marshall-Moseby v. Corporate Receivables, Inc.*, 205 F. 3d 323, 324-25 (7th Cir. 2000). The notice must include the amount of the debt, 15 U.S.C. § 1692g(a)(1), the name of the Creditor to whom the debt is owed, 15 U.S.C. § 1692(A)(g), and a statement that unless the debtor "disputes the validity of the debt...the debt will be assumed to be valid by the debt collector, 15 U.S.C. § 1692(g)(a)(3). In addition, the notice must disclose that the debt collector, upon written request by the debtor within thirty days of receiving

the notice, will provide verification of the debt, 15 U.S.C. § 1692g(a)(4), and provide the name and address of the original creditor, if different from the current creditor, 15 U.S.C. § 1692g(a)(5). If, within the thirty-day period, the debtor notifies the debt collector that the debt is disputed or requests the name and address of the original creditor, then the debt collector "shall cease collection of the debt" until the debt collector obtains verification of the debt or the name and address of the original creditor and the requested information is mailed to the debtor.

In the present case, the Plaintiffs allege that the Defendants violated the FDCPA by "failing to send validation notices within five days of the initial communication [**in connection with the collection of a debt**] in violation of 15 USC 1692g" and in sending or allowing to be sent, a Notice of Deficiency "without including in the notice the language required by 15 U.S.C. 1692g." This argument, however, is without merit.

### 1. The Notices Of Deficiency In Question Were Not Issued In Connection With The Collection Of Any Debt.

Federal courts have held that routine communications required by law or merely providing the status of an account do not constitute an initial communication or other conduct "in connection with the collection of a debt". See, e.g., _Bailey v. Security National Servicing Corp._, 154 F. 3d 384 (7th Cir. 1998) [holding that a letter was not "sent in connection with the collection of any debt" because it did not demand a payment but, rather, informed the debtor of the status of the account]; _Buckley v. Bass & Associates_, 249 F. 3d 678 (7th Cir. 2001) [holding that a communication from an attorney requesting information from a debtor that did not include a demand for payment was not a communication in connection with the collection of a debt].

11

Similarly, in the present case, the Notices in question were not issued in connection with the collection of a debt. (Answer, paras. 34-36). **On their face, they do not request the payment of any debt.** They were issued to provide "an explanation" to the Plaintiffs following the disposition [sale] of the Plaintiffs' Cadillac, because of **the requirement of Ohio law, as mandated by R.C. 1309.616**, which is part of the Ohio Uniform Commercial Code. (Answer, paras. 34-36). [For contrast, see the prototypical communication related to "the collection" of a debt described by Chief Judge Posner in Bartlett v. Heibl, 128 F. 3d 497, 501 (7th Cir. 1997)].

### 2. The Notices In Question Were Issued Pursuant To The Mandatory Requirement Of O.R.C. 1309.616

The issuance of the Notices in question was governed and mandated by O.R.C. § 1309.616(B) which states, in pertinent part:

> (B) In a consumer-goods transaction in which the debtor is entitled to a surplus or a consumer obligor is liable for a deficiency under section 1309.615 of the Revised Code, **the secured party shall:**
>
> (1) **Send an explanation to the debtor** or the consumer obligor, as applicable, after the disposition and;
>
> (a) Before or when the secured party accounts to the debtor and pays any surplus or first makes written demand on the consumer obligor after the disposition for payment of the deficiency; and;
>
> (b) Within fourteen days after receipt of a request; *** [Emphasis Added]

Because Ohio law required this explanation [Notice] before any written demand for payment of the deficiency arising from the sale of the Cadillac, the Notice of Deficiency was a condition precedent to making any request or demand for payment of the debt. Accordingly, **it was not, as a matter of law, a communication in connection with the collection of the Plaintiff's debt.** Moreover, because the Notice

12

complied with and was required by Ohio law, it cannot reasonably constitute a violation of the FDCPA. To impose FDCPA liability upon an Ohio lawyer and law firm for complying with Ohio law would be a result not contemplated by the FDCPA.

### F. The Plaintiffs' FDCPA Claim Under 15 U.S.C § 1692e Also Fails As A Matter Of Law.

Although the statutory provision is not cited in the Plaintiffs' complaint. it appears that the Complaint attempts to make a claim under 15 U.S.C. § 1692e which states, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means **in connection with the collection of any debt**. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>
> [Emphasis Added]

Paragraph 4b of the Complaint alleges, in pertinent part, that "Defendants violated Federal and Ohio consumer protection statutes and regulations by ... giving the false impression that **communications seeking to collect upon a debt** were from attorneys at times when they were not". [Emphasis Added] The Complaint also alleged that the "letter" attached to the Complaint as Exhibits A and B [the Notice of Deficiency] "misrepresented that the correspondence was from Defendants". (Complaint, para. 6b).

The claim fails as a matter of law for two reasons. First, as noted earlier, and as is apparent from the face of the Notices in question, they were not "communications seeking to collect upon a debt" or made "in connection with the collection of any debt".

Secondly, as admitted by the Defendants at paragraph 8 of their Answer, the defendants "were directly and personally involved in and approved" the issuance of the

Notices in question. The documents were on the letterhead of Defendant Dana & Pariser Co., L.P.A, and were "from an attorney". Defendant David B. Pariser is an attorney. (Complaint, para. 3). Accordingly, there was no "false, deceptive, or misleading representation".

### G. The Plaintiff's FDCPA Claim For Injunctive Relief Fails To State A Claim As A Matter Of Law.

Some courts have held that the FDCPA does not allow private actions for injunctive relief. See, e.g., *Sibley v. Fulton DeKalb Collection Serv.*, 677 F. 2d 830, 834 (11th Cir. 1982)[stating that "equitable relief is not available to an individual under the civil liability sections of the Act"]; *Zanni v. Lippold*, 119 F.R.D. 32, 33-34 (C.D. Ill. 1988)]finding that the FDCPA did not allow individual litigants to obtain injunctive relief]; *Strong v. National Credit Management Co.*, 600 F. Supp. 45, 36-47 (E.D. Ark. 1984)[same]; *Duran v. Credit Bureau Of Yuma*, 93 F.R.D. 607, 608-609 (D. Ariz. 1982)[same]. In the present case, the Plaintiffs are not entitled to injunctive "relief" under the FDCPA.

### H. The Plaintiff's Action Against The Defendants Is Barred Since The FDCPA Upon Which It Is Based, Violates The Tenth Amendment To The U.S. Constitution And Is Unconstitutional As Applied.

The FDCPA, as applied to the Defendants, is unconstitutional. **The Federal government does not have constitutional authority to regulate the practice of law in Ohio by Ohio attorneys**, since the regulation of the practice of law in Ohio is a function of state government. Ohio's power "to regulate the practice of law within its borders" is "beyond question". See *Brotherhood of R.R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 6 (1964); *United Mine Workers, Dist. 12 v. Ill State Bar Ass'n*, 389 U.S. 217, 222 (1967); *Southern Gum Co. v. Laylin*, 66 Ohio St. 578 (1902). This

14

power is one of the powers reserved to Ohio by the Tenth Amendment, which provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited to it by the States, are reserved to the States respectively, or to the people."

### 1. The Regulation Of The Practice Of Law By Lawyers Has Been Left Exclusively To The States.

"Since the founding of the Republic, the licensing and regulation of lawyers has been left **exclusively** to the States and the District of Columbia within their respective jurisdictions." Leis v. Flynt, 439 U.S. 438, 442 (1979) "The regulation of the practice of law...is a function of state government." Saier v. State Bar of Michigan, 293 F. 2d 756, 759-60 (6th Cir. 1961), cert denied, 368 U.S. 947 (1961). Indeed, "[a] state's interest in regulating the practice of law within its borders is compelling, because lawyers are essential to the primary governmental function of administering justice." Salibra v. Supreme Court of Ohio, 730 F. 2d 1059, 1063, cert. denied, 469 U.S. 917 (1984). Also see Hoover v. Ronwin, 466 U.S. 558, 569 (1984); Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 434-35 (1982). As noted in New York v. United States, 505 U.S. 144 (1992), "[I]f a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress. See United States v. Oregon, 366 U.S. 643, 649 (1961); Case v. Bowles, 327 U.S. 92, 102 (1946); Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 534 (1941)."[1] Ohio's regulation of the practice of law is an attribute of state sovereignty. See Berger v. Cuyahoga County Bar Association, 983 F. 3d 718, 722

---

[1] The infringement of state sovereignty by the Federal government is a very serious constitutional matter. Indeed, as the Ohio Supreme Court properly recognized in Scott v. Bank One Trust Co., N.A., 62 Ohio St. 3d 39, 43 (1991), "[f]rom the state's viewpoint, losing part of its sovereignty is **no small matter**..." [Emphasis Added]

15

(6th Cir. 1993) rehearing and rehearing en banc. denied [recognizing that the promulgation and enforcement of rules by the Ohio Supreme Court "pursuant to its constitutional grant of power to regulate the practice of law" were "**exercises of Ohio's sovereign power.**" The FDCPA, as applied, is incompatible with the principles of Federalism inherent in the U.S. Constitution's division of power and impermissibly intrudes upon and infringes Ohio's exclusive sovereign power to regulate the practice of law in Ohio by Ohio lawyers.

### 2. The Commerce Clause Of The U.S. Constitution Does Not Grant Congress The Power To Regulate The Practice Of Law In Ohio By Ohio Lawyers.

Congress' authority to regulate interstate commerce does not permit it to regulate the activity of Ohio attorneys representing an Ohio client in a matter with other residents of Ohio. The Commerce Clause is not "a general police power of the sort retained by the States." *United States v. Lopez*, 514 U.S. 549, 567 (1995)[holding that the Gun-Free School Zones Act of 1990 exceeded the authority of Congress '[t]o regulate Commerce...among the several States..." U.S. Const., Art I. § 8, cl 3]. The conduct of the Defendants in this case is, accordingly, **not** within the scope of Congressional authority to regulate interstate commerce. [2]

---

[2] The Supreme Court has held in *Heintz v. Jenkins*, 514 U.S. 291 (1995) that the term "debt collector" in the Fair Debt Collection Practices Act, 91 Stat. 874, 15 U.S.C. §§ 1692-1692o (1988 ed. and Supp. V) "applies to a lawyer who 'regularly' through litigation, tries to collect consumer debts." Id. 292. A review of the Court's very short opinion, however, indicates that **the important constitutional issues presented in the instant case were not raised or addressed in *Heintz*.** The *Heintz* case is also distinguishable on the facts in that it involved a letter written by an attorney [George Heintz] in an effort to collect a debt which contained a false representation about the amount of debt. Accordingly, the *Heintz* case is not controlling or dispositive of this motion or the issues presented herein.

16

**O.  Both The FDCPA And The OCSPA, As Applied To The Defendants, Are Void For Vagueness And Are Overly Broad.**

The FDCPA and the OCSPA, **as applied**, are both void for vagueness. "It is a basic principle of due process than an enactment is void for vagueness if its prohibitions are not clearly defined…we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning…[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them ***" Grayned v. City of Rockford, 408 U.S. 104, 108-109 (1972). See, e.g., United States v. L. Cohen Grocery Co., 255 U.S. 81, 89 (1921)(finding Section 4 of the Food Control Act void for vagueness).

In the present case, a person of ordinary intelligence would certainly not know that compliance with a mandatory requirement and safe harbor provision of Ohio's Uniform Commercial Code would, as the Plaintiff suggests, constitute a violation of either the FDCPA, the OCSPA, or both. Moreover, as applied and construed by the Plaintiff, both statutes are "unconstitutionally overbroad" since there exists "a realistic danger that the statute[s]", would "chill speech" or protected conduct outside the purpose of their legitimate regulatory purpose. A law is unconstitutionally overbroad when there exists "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court." United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Auth., 163 F. 3d 341, 361 (6th Cir. 1988). The imposition of liability under either the FDCPA or the OCSPA for the issuance of a Notice of Deficiency which complies with O.R.C. § 1309.616 would clearly have a chilling effect on lawyers representing their clients.

17

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court render judgment on the pleadings in their favor and dismiss the Plaintiffs' complaint with prejudice.

Respectfully Submitted,

/s/ David K. Frank

---
David K. Frank          (0022925)
MAZANEC, RASKIN & RYDER CO., L.P.A.
250 Civic Center Drive, Suite 400
Columbus, Ohio 43215
(614) 228-5931
(614) 228-5934 FAX
E-mail: dfrank@mrrlaw.com

**Trial Attorney for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the attorneys listed below if they are CM/ECF participants:

**Ronald L. Frederick (0063609)**
**Attorney for Plaintiffs**
Law Office of Ronald Frederick
55 Public Square, Suite 1300
Cleveland, Ohio 44113-1921

**Valerie A. Roller (0040026)**
**Attorney for Plaintiffs**
Law Office of Ronald Frederick
55 Public Square, Suite 1300
Cleveland, Ohio 44113-1921

**Brian T. Cooperman (0077966)**
**Attorney For Plaintiffs**
Portman, Foley & Flint, LLP
471 East Broad Street, Suite 1820
Columbus, Ohio 43215

**Jim Petro (0022096)**
**Frank M. Strigari (0078377**
Ohio Attorney General's Office
Constitutional Offices Section
30 East Broad Street, 17th Floor
Columbus, Ohio 43215-3428

Attorney for Jim Petro
Ohio Attorney General

/s/ David K. Frank

---

David K. Frank (0022925)
**Trial Attorney for Defendants**
MAZANEC, RASKIN & RYDER CO., L.P.A.
250 Civic Center Drive, Suite 400
Columbus, Ohio 43215
(614) 228-5931
(614) 228-5934 FAX
E-mail: dfrank@mrrlaw.com

19